UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ABEL MARTINEZ ALEMAN a/k/a PEDRO RIVERA,<br><br>          Petitioner,<br><br>   v.<br><br>PAMELA BONDI, et al.,<br><br>          Respondents. | CASE NO. 2:25-cv-02346-JNW<br><br>ORDER DENYING PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER |

## 1.  INTRODUCTION

Immigration detainee Abel Martinez Aleman moves for a temporary restraining order in this habeas case, seeking to enjoin his removal from the United States and his transfer out of this district. Dkt. No. 2. For the reasons below, the Court DENIES the motion.

## 2.  BACKGROUND

Martinez Aleman is an El Salvadorian citizen who has lived in the United States since 1988. After entering the United States, he immediately applied for asylum, but he failed to attend his immigration court hearing. *See* Dkt. No. 16-1 at 74, 104, 108, 148. As a result, the immigration judge administratively closed the

ORDER DENYING PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER - 1

matter without prejudice and ordered that no further action be taken until Martinez Aleman could be found and further proceedings scheduled. *Id.* at 104, 108, 148.

Martinez Aleman's immigration history is complicated. After his initial asylum case was administratively closed, he obtained another person's birth certificate and applied for relief under that name—Pedro Rivera. Dkt. No. 16-1 at 74. On July 14, an immigration judge ("IJ") denied Martinez Aleman's application and ordered his voluntary departure to El Salvador, or in the alternative, to Mexico. Dkt. No. 16-1 at 142. When he did not voluntarily depart within 90 days of the IJ's order, that order converted to a removal order.

Following the removal order, Martinez Aleman asserts that ICE placed him on an order of supervision ("OSUP") in 2014 and that for more than ten years, he has complied with that order, attending regularly scheduled ICE check-ins. *See id.* The record does not contain his OSUP, but the Government does not challenge its existence or Martinez Aleman's statement that he has complied with it. *See* Dkt. No. 12 at 3. On January 8, 2025, ICE terminated his OSUP for unknown reasons. Dkt. No. 1 at ¶ 22.

In August 2025, ICE sent Martinez Aleman a letter scheduling his removal for September 22, 2025. Dkt. No. 16-3 at 172. In response and with help from new counsel, Martinez Aleman moved to reopen his immigration proceedings, which an IJ denied. Dkt. No. 16-4 at 9–11. Martinez Aleman appealed that decision with the Board of Immigration Appeals ("BIA") and moved to stay removal pending his appeal. The BIA denied his motion to stay, and his appeal is still pending. On

November 18, when Martinez Aleman attended his regularly scheduled ICE check-in, ICE took him into custody.

Martinez Aleman petitioned for writ of habeas corpus and moved for temporary restraining order ("TRO") in this Court. His TRO motion asks the Court to enjoin Respondents ("Government") from (1) "removing or deporting him from the United States while these proceedings are pending," and from (2) "[t]ransferring [him] to any other detention facility during the pendency of these proceedings." Dkt. No. 2-1 (proposed order) at 2. The Government opposes the motion. In support of its opposition, the Government filed a declaration from ICE Deportation Officer ("DO") Mihaela Hammer. Dkt. No. 13. Martinez Aleman moved to strike the declaration. Dkt. No. 15 at 10–11.

## 3. DISCUSSION

### 3.1 The Court grants Martinez Aleman's motion to strike.

Martinez Aleman moves to strike DO Hammer's declaration for lack of personal knowledge and alleged factual inaccuracies. Declarations must be based on personal knowledge, *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1063 (9th Cir. 2012), and courts may strike declarations that are not, *Reed v. Kariko*, Case No. 3:20-cv-05580-BHS-DWC, 2021 WL 4290171, at *1 (W.D. Wash. Sept. 21, 2021). DO Hammer's declaration confirms that it is not based on personal knowledge; they state that their declaration is based in part on "information obtained from other individuals employed by ICE." Dkt. No. 13 ¶ 2. Because the declaration does not distinguish between statements based on personal knowledge and those based on

hearsay, the Court cannot sever the admissible from the inadmissible. Accordingly, the Court GRANTS Martinez Aleman's motion to strike DO Hammer's declaration, Dkt. No. 13, in its entirety.

The Court notes, however, that this ruling does not affect the outcome here. As discussed below, the Court's denial of the TRO rests on jurisdictional grounds that do not depend on the facts described in DO Hammer's declaration.

### 3.2 The Court lacks subject matter jurisdiction to hear Martinez Aleman's claim arising from the execution of his removal order.

Martinez Aleman challenges: (1) the revocation of his OSUP; (2) his present detention; and (3) the Government's decision to execute his removal order before the BIA resolves his motion to reopen. The Government argues that 8 U.S.C. § 1252(g) deprives this Court of jurisdiction to stay Martinez Aleman's removal. The Court agrees.

Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g) (emphasis added). The Supreme Court has interpreted this provision narrowly, limiting it to only "three discrete actions": the "'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" *Reno v. Am.-Arab Anti–Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("AADC") (quoting 8 U.S.C. § 1252(g)) (emphasis in original). The Court rejected any reading of the statute that would cover "the universe of deportation claims," *id.*, and cautioned against

interpreting it to "sweep in any claim that can technically be said to 'arise from'" these three actions, *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018); *see AADC*, 525 U.S. at 482 ("It is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings."). Likewise, the Ninth Circuit has recognized that "[w]here the Attorney General totally lacks the discretion to effectuate a removal order, § 1252(g) is simply not implicated." *Arce v. United States*, 899 F.3d 796, 801 (9th Cir. 2018). As this Court has previously found, "the proper jurisdictional analysis under Section 1252(g) focuses on the government action or decision that gives rise to the plaintiff's claims, not whether the plaintiff's claims might affect or preclude removal." *Sepulveda Ayala v. Bondi*, 794 F. Supp. 3d 901, 908 (W.D. Wash. 2025) (citing *Arce*, 899 F.3d at 799–800).

Applying this framework, courts have distinguished between challenges to ICE's discretion to execute a removal order—which are barred—and challenges to the legality of detention or the revocation of supervised release—which are not. *See M.S.L. v. Bostock*, No. 6:25-cv-01204-AA, 2025 WL 2430267, at *7 (D. Or. Aug. 21, 2025) ("Courts have 'distinguished between challenges to ICE discretion to execute a removal order, which are barred, and challenges to the manner in which ICE executes the removal order, which are not.'" (quoting *Ceesay v. Kurzdorfer*, 25 CV-267-LJV, 2025 WL 1284720, at *8 (W.D.N.Y. May 2, 2025)).

For instance, in *Ceesay v. Kurzdorfer*, the district court determined that because the petitioner "d[id] not challenge ICE's ability to remove him but only the legality of his current detention" and "ICE's ability to hold him in detention without

ORDER DENYING PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER - 5

adequate process for weeks and months on end," Section 1252 did not bar jurisdiction. 2025 WL 1284720, at *9–10. Likewise, in *M.S.L. v. Bostock*, the court concluded that the petitioner was "not challenging her order of removal" but was rather challenging "the present fact of her detention and the lack of process surrounding her detention," including the lack of process surrounding the revocation of her OSUP. 2025 WL 2430267, at *7. Martinez Aleman's detention and OSUP claims are of this type; they challenge the legality of his custody, not the Government's decision to execute his removal order. The Court therefore has jurisdiction over those claims.

Martinez Aleman's request to stay his removal, however, is a different matter. In *Rauda v. Jennings*, the Ninth Circuit held that 8 U.S.C. § 1252(g) bars district courts from enjoining removal while a motion to reopen is pending before the BIA. 55 F.4th 773, 777–78 (9th Cir. 2022). The facts here are materially the same as *Rauda*. There, as here, the Government sought to remove the petitioner to El Salvador while his motion to reopen was pending before the BIA. Like here, the motion to reopen was based on new developments in El Salvador, including changed political conditions and fear of persecution. *Id*. at 776; *Rauda v. Jennings*, Case No. 21-cv-03897-CRB, 2021 WL 2413006, at *3 (N.D. Cal. June 14, 2021). There, as here, the BIA denied the petitioner's request for a stay. And there, as here, the petitioner filed a habeas petition with the district court, seeking to enjoin removal while the BIA considered his motion to reopen. *Rauda*, 55 F.4th at 777. The petitioner maintained that "refusing to enter a stay of removal pending the resolution of his motion to reopen would deprive [him] of his statutory right to file a

motion to reopen." *Id.* (citation modified). The district court denied the TRO motion for lack of subject matter jurisdiction. *Id.* The Ninth Circuit affirmed, finding that Section 1252(g) precluded the district court from staying removal.

In reaching its decision, it adopted Sixth Circuit precedent in which "petitioners sought a stay while they argued that changed country conditions required reconsideration of their removal orders." *Id.* at 777–78 (citing *Hamama v. Adducci*, 912 F.3d 869, 873 (6th Cir. 2018)). The Sixth Circuit held that Section 1252(g) barred this relief, finding that "the Attorney General's enforcement of long-standing removal orders falls squarely under the Attorney General's decision to execute removal orders and is not subject to judicial review." *Id.* (citing *Hamama*, 912 F.3d at 874). As the Ninth Circuit explained, "the discretion to decide *whether* to execute a removal order includes the discretion to decide *when* to do it. Both are covered by the statute." *Id.* (citation and quotation omitted).

Martinez Aleman tries to distinguish his case from *Rauda* in two ways, but neither is material. First, he explains that the petitioner in *Rauda* challenged only his removal and not his detention. *Rauda*, 55 F.4th at 779. That distinction is inapt because Martinez Aleman asks the Court to stay his removal while he seeks to reopen his removal proceedings—relief the Ninth Circuit rejected in *Rauda* under very similar circumstances. *See id.* at 779–80.

Second, Martinez Aleman argues that, unlike the petitioner in *Rauda,* he will not realistically be able to pursue his immigration case after he is removed from the country. He states that "removal effectively nullifies any benefit to a motion to reopen because his [requested] relief mandates his presence in the United States."

ORDER DENYING PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER - 7

Dkt. No. 15 at 6. But the petitioner in *Rauda* faced the same or materially similar circumstances—he also sought asylum and relief under CAT. *Rauda*, 55 F.4th at 776. And in any event, Martinez Aleman fails to explain why this purported distinction is material to a Section 1252(g) analysis.

Martinez Aleman also cites to recent district court cases holding that a non-citizen "cannot be removed to a third country without sufficient notice and an opportunity to be heard." *Nguyen v. Scott*, 796 F. Supp. 3d 703, 727 (W.D. Wash. 2025); *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1010 (W.D. Wash. 2019). Those cases are distinguishable. Martinez Aleman faces removal to one of the countries designated in his initial, 2009 removal order—not to a third country. Accordingly, this case is much more like *Rauda* than recent cases challenging the Government's third-country removal policies.

Accordingly, under *Rauda*, the Court lacks subject matter jurisdiction to consider Martinez Aleman's claims challenging the execution of his removal order. Although the Court has jurisdiction over his detention and OSUP claims, those claims do not support a stay of removal. The Court thus cannot grant Martinez Aleman's request to enjoin his removal.

### 3.3  The Court denies Martinez Aleman's TRO motion.

#### 3.3.1  Legal standard.

Preliminary injunctive relief exists to preserve the status quo and the rights of the parties during the litigation, before a final judgment. *See U.S. Philips Corp. v. KBC Bank N. V.*, 590 F.3d 1091, 1094 (9th Cir. 2010). "[I]njunctive relief [is] an

extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "The proper legal standard for preliminary injunctive relief requires a party to demonstrate [1] 'that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 20).

The Ninth Circuit takes a "sliding-scale" approach to preliminary relief, under which "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiffs can support issuance of [preliminary injunctive relief], so long as the plaintiffs also show that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021) (cleaned up). This approach allows a stronger showing of one *Winter* factor to offset a weaker showing of another. *Planned Parenthood Great Nw., Hawaii, Alaska, Indiana, Kentucky v. Labrador*, 122 F.4th 825, 843–44 (9th Cir. 2024).

In all circumstances, the moving party must make "a showing on all four prongs" under *Winter* to obtain preliminary injunctive relief. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

### 3.3.2 Martinez Aleman is not likely to succeed on a claim that would entitle him to a stay of removal.

Martinez Aleman's TRO motion asks the Court to stay his removal. But the only claim that could entitle him to that relief is his challenge to the execution of his removal order. Because the Court lacks jurisdiction to hear that claim, Martinez Aleman cannot show a likelihood of success on it.

None of Martinez Aleman's other claims entitle him to a stay of removal, even if he succeeds on them. Indeed, success on his claims challenging his detention and OSUP revocation would only "*release* [him] from unlawful executive detention," not preclude his removal. *Rauda*, 55 F.4th at 779 (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020)). And as the Ninth Circuit has noted, removal itself is release from custody. *See id.* ("Rather than seeking the traditional use of habeas, [the petitioner] specifically wants to avoid being released (into El Salvador)."). In short, Martinez Aleman has not shown that he is likely to succeed on any claim that would stay his removal.

Martinez Aleman argues that the Court may stay his removal as a form of preliminary relief under the All Writs Act because a temporary restraining order would preserve this Court's jurisdiction and his access to counsel. Dkt. No. 15 at 9. Under the All Writs Act, a district court "may issue all writs necessary or appropriate in aid of [its] . . . jurisdiction[ ] and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). But it "does not enlarge" a court's jurisdiction. *Clinton v. Goldsmith*, 526 U.S. 529, 534–35 (1999). The All Writs Act does not help Martinez Aleman, as his habeas claims seek release from unlawful

ORDER DENYING PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER - 10

detention. Removal to El Salvador is release. The Court need not enjoin removal to preserve jurisdiction over this case because removal would resolve Martinez Aleman's habeas claims. *See Rauda*, 55 F.4th at 779 (citing *Thuraissigiam*, 591 U.S. at 107).

### 3.3.3 Martinez Aleman has not shown that he is likely to suffer irreparable harm absent a TRO enjoining his transfer out of this district.

Martinez Aleman also asks the Court to enjoin his transfer out of this district while these proceedings are ongoing. But he fails to show that he faces imminent transfer. To obtain a TRO, he must show imminent irreparable harm. He has not done so. Consistent with the Western District of Washington's General Order 10-25 and its model scheduling order, the Government must provide Martinez Aleman with "at least 48 hours' notice (or 72 hours' notice if the period extends into a weekend, holiday, or date the Court is closed) prior to any action to move or transfer … [him] from the Western District of Washington or to remove them from the United States." This notice enables Martinez Aleman and his counsel to seek emergency relief if needed. No other protections are warranted now.

## 4. CONCLUSION

Accordingly, the Court DENIES Petitioner's motion for a temporary restraining order, Dkt. No. 2, and GRANTS Martinez Aleman's motion to strike DO Hammer's declaration, Dkt. No. 13, in its entirety. Additionally, pursuant to General Order 10-25 and its model scheduling order, the Court ORDERS that Respondents must provide Petitioner and his counsel at least 48 hours' notice (or 72

hours' notice if the period extends into a weekend, holiday, or date the Court is closed) before any action to move or transfer any Petitioner(s) from the Western District of Washington or to remove him from the United States.

Dated this 14th day of January, 2026.

*[signature]*
Jamal N. Whitehead
United States District Judge

ORDER DENYING PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER - 12